UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **KEVIN GROVE,** *Plaintiff,* vs. **SOUTHERN NEW HAMPSHIRE UNIVERSITY** *and* **LAUNCH SERVICING, LLC,** *Defendants.* | CASE NO.: **COMPLAINT AND DEMAND FOR JURY TRIAL** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, Kevin Grove ("Mr. Grove"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, Southern New Hampshire University ("SNHU"), and Launch Servicing, LLC ("Launch Servicing") (jointly, the "Defendants"), stating as follows:

**PRELIMINARY STATEMENT**

1.   This is an action by Mr. Grove against SNHU only for violations of Indiana's Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-0.1, *et seq.* ("IDCSA"), and for Fraud under Ind. Code § 35-43-5-4, against both Defendants for violations of Indiana's Uniform Consumer Credit Code, Ind. Code § 24-4.5-7-101, *et seq.* ("IUCCC"), and against Launch Servicing only for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

**JURISDICTION AND VENUE**

2.   Subject matter jurisdiction for Plaintiff's FCRA claims arise under 28 U.S.C. § 1331, as the FCRA is a federal statute.

Page **1** of **35**

3. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

4. The Defendants are subject to the jurisdiction of this Court pursuant Ind. Trial R. 4.4 and Fed. R. Civ. P. 4(k).

5. Venue is proper in the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and/or caused by the Defendants within the Southern District of Indiana.

**PARTIES**

6. Mr. Grove is a natural person currently residing in Minnesota.

7. Mr. Grove is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

8. SNHU is a New Hampshire corporation with a principal address of 2500 N. River Rd, Manchester, NH, 03106.

9. SNHU is the successor-in-interest to the previous for-profit corporation, Kenzie Academy, Inc. ("Kenzie Academy"), which was incorporated in the State of Delaware with its principal place of business in Indianapolis, Indiana.

10. Kenzie Academy was originally registered in the State of Indiana on or about June 13, 2017. Kenzie Academy had its Certificate of Authority revoked on or about March 5, 2022.

11. Southern New Hampshire University registered to do business in the State of Indiana on or about March 31, 2021, as a foreign nonprofit corporation, and remains registered with the Secretary of State of Indiana as of the filing of this Complaint as owner and operator of "Kenzie Academy."

12. Launch Servicing is a Delaware limited liability company with a principal address of 402 W. Broadway, 20th Fl., San Diego, CA 92101.

13. Launch Servicing is registered to conduct business in the State of Indiana, where its registered agent is National Registered Agents, Inc., 2 1/2 Beacon Street, Concord, NH, 03301.

14. Launch Servicing is a furnisher of information to the "big three" consumer reporting agencies, Experian, Equifax and Trans Union (the "CRAs").

## FACTUAL ALLEGATIONS

### Mr. Grove's Income Share Agreement

15. From April 2020 through April 2021, Mr. Grove was a student at Kenzie Academy.

16. During this time, Mr. Grove resided in Indianapolis, Indiana.

17. Kenzie Academy billed itself as an online "trade school" – a school which students could obtain certain specialized certifications online.

18. Mr. Grove enrolled at Kenzie Academy for the purpose of obtaining a certification in Computer Software Engineering, which he obtained on or about April 30, 2021.

19. Kenzie Academy offered its students the ability to finance their education through income share agreements ("ISAs") – a financing mechanism whereby Kenzie Academy received a portion of the student's income following the completion of their education program.

20. Mr. Grove had other means of financing available to him, including traditional student loans, and was able to cover tuition at Kenzie Academy without an ISA.

21. Mr. Grove discussed financing options with a recruiter for Kenzie Academy.

22. The recruiter directed Mr. Grove to Kenzie Academy's ISA program, stressing the "convenience" of an ISA and that he would not need to pay anything out of pocket up front.

23. Mr. Grove entered into an income share agreement with Kenzie Academy on or about January 13, 2020. **SEE PLAINTIFF'S EXHIBIT A.**

24. Mr. Grove's ISA states prominently, at the top "THIS IS NOT A LOAN OR CREDIT."

25. Mr. Grove's ISA states that the costs of the services Mr. Grove would receive through this ISA were $23,900.00.

26. The full $23,900 was applied to cover Mr. Grove's tuition at Kenzie Academy.

27. To cover these "costs of services," Mr. Grove was required to "share" 13% of his gross monthly income with Kenzie Academy, which "sharing" would continue for 48 payments, for 96 months after the "Grace Period" ends, or until $41,825.00 had been paid by Mr. Grove.

28. The ISA provided for a deferment period of three months following Mr. Grove's enrollment, after which payments would begin (the "Grace Period").

29. However, per the terms of the ISA, no payment would be due in any month where Mr. Grove's income was below $3,333.34.

30. If Mr. Grove's monthly income reached $3,333.34, he would be required to pay $433.33 per month.

31. Making the minimum possible payment of $433.33 per month, Mr. Grove would pay back $20,799.84 in 48 months if his income were not to change.

32. Mr. Grove made his first payment in September 2021.

33. To date, Mr. Grove has paid at least $2,259.10.

34. SNHU purchased Kenzie Academy in March 2021, to take on their software engineering, user experience design, and business-to-business programs.

35. SNHU is thus the successor-in-interest to Kenzie Academy.

**Launch Servicing's Reporting of the ISA**

36. Mr. Grove's ISA was originally serviced by Vemo Education, Inc., a now-defunct entity.

37. Launch Servicing took over as servicer for the account in or around May 2022.

38. Launch Servicing thereafter begin reporting Mr. Grove's ISA to each of Experian, Equifax and Trans Union, monthly.

39. Launch Servicing reported the ISA as an *education loan* with an original balance of $41,825, the maximum amount possible for Mr. Grove could be required to pay back.

40. At the time Vemo took over Mr. Grove's ISA, it was in deferment, as Mr. Grove was not earning $3,333.34 per month.

41. Despite this, Launch reported "late" payments to the CRAs in July and August 2022, negatively impacting his credit score.

42. Mr. Grove's credit score dropped significantly from 740 to 681 due to Launch's erroneous reporting.

43. In or around November 2022, Mr. Grove disputed Launch's credit reporting to Experian.

44. Upon information and belief Experian upon receipt of Mr. Grove's dispute, sent an *Automated Consumer Dispute Verification* Request ("**ACDV**") to Launch Servicing, thereby requesting that Launch Servicing conduct a reasonable investigation into Mr. Grove's dispute.

45. Launch Servicing completed its investigation into Mr. Grove's dispute, verifying its reporting of the ISA as accurate.

46. As a result, Mr. Grove's ISA continued to report with late payment history for July and August 2022.

47. Launch Servicing's investigation into Mr. Grove's dispute was therefore unreasonable, as any reasonable investigation would have corrected the late payment history.

48. As a result of the near-60 point reduction in his credit scores, Mr. Grove could not apply for new credit.

49. Beyond this, the inaccurate Launch Servicing tradeline was included in reports sold by Experian, Equifax, and/or Trans Union to, among others not listed, the following creditors and potential creditors of Mr. Grove:

   a. Synchrony Bank, on or about October 11, 2022;

   b. JP Morgan Chase Bank, on or about October 11, 2022;

   c. Comenity Bank, on or about May 4, 2023; and,

   d. Verizon, on or about November 28, 2022 and December 6, 2022.[1]

50. Mr. Grove has also spent significant time and money disputing Launch Servicing's inaccurate reporting, including postage fees for mailing dispute letters.

### The ISA Amounts to a Private Education Loan

51. While Kenzie Academy claimed in bold lettering that Mr. Grove's ISA was not a loan, The Consumer Financial Protection Bureau ("CFPB") and other state equivalent agencies have found that these sorts of agreements are "loans" as defined by federal and state statutes and regulations.

52. In January 2022, the CFPB updated its examination procedures for private student lending to explicitly reference ISAs.

---

[1] Consumer reports sold to creditors and potential creditors are generally not provided to consumers. Thus, Plaintiff cannot state with certainty that the inaccurate Launch Servicing tradeline was included in each of the listed reports; however, these reports should be accessible in discovery.

53. In March 2022, the U.S. Department of Education (specifically, the Office of Postsecondary Education) reminded all colleges and other entities involved in recommending, promoting, or endorsing private education loan products that they must comply with existing consumer protection requirements for preferred lender arrangements established under the Higher Education Act.

54. From the U.S. Department of Education's perspective, as of March 2022 through today, ISAs used to finance expenses for postsecondary education are considered private education loans for the purposes of the Department's rules on preferred lender arrangements. 20 U.S.C. § 1019.

55. Indeed, the ISA provided Mr. Grove with funds to cover the expenses of post-secondary education, which he was then required to repay, plus interest.

56. The ISA thus amounts to a private education loan under TILA, 15 USC § 1650(a)(8).

57. Kenzie Academy regularly directed its students to its ISA program.

58. As a result, Kenzie Academy issued dozens, and likely hundreds or more of ISAs to students enrolling in its educational programs.[2]

59. While the form of the ISAs varied slightly over time, each ISA was issued by Kenzie Academy to cover the educational expenses of the student.

60. Each ISA was in a substantially similar form to that provided by Kenzie Academy to Mr. Grove.

---

[2] While the exact number of ISAs made by Kenzie Academy is unknown to Plaintiff at this time, such information is discoverable.

61. Kenzie Academy is thus a "private educational lender" under TILA, 15 U.S.C. § 1650(a)(7)(C), because it was "engaged in the business of soliciting, making, or extending private education loans."

62. On information and belief, Kenzie Academy styled its education loans as ISAs in an attempt to avoid state usury laws, and other lending regulations.

63. Paying a total of $41,825 over a four-year period, on a loan with a principal of $23,900, equates to an Annual Percentage Rate exceeding 30% - rates deemed illegal in most states.

64. Likewise, a majority of states, including Indiana, where Kenzie Academy was domiciled, require a license to issue and collect a loan.

65. Kenzie Academy failed to obtain any such license, and thus had no legal ability to make a loan to Mr. Grove.

66. Mr. Grove's ISA was thus void under Indiana law.

67. Because Plaintiff is entitled to a refund, he hereby formally demands a refund of all amounts paid towards the ISA, pursuant to Ind. Code § 24-4.5-5-202(4).

68. As a result of the Defendants' conduct, Mr. Grove has made payments on a void loan.

69. Mr. Grove has also suffered significant emotional distress upon learning that Kenzie Academy did not have the legal authority to issue the ISA to him.

70. Mr. Grove has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

### COUNT I
### VIOLATIONS OF THE IUCCC, IND. CODE § 24-4.5-3-502
### SNHU ONLY

71. Mr. Grove adopts and incorporates paragraphs 1 – 70 as if fully stated herein.

72. Mr. Grove's ISA involved the creation of a debt by Kenzie Academy by virtue of Kenzie Academy's agreement to pay Mr. Grove's tuition.

73. Mr. Grove's ISA thus meets the definition of a "loan" under Ind. Code § 24-4.5-3-106.

74. Mr. Grove's ISA also meets the definition of a "consumer loan" under Ind. Code § 24-4.5-1-301.5, as:

    a. Mr. Grove is not an organization;

    b. Mr. Grove utilized the funds from the ISA for his personal education;

    c. The ISA contained a finance charge and was payable in installments; and,

    d. The principal of the ISA, the "ISA Amount," did not exceed the exempt threshold amount.

75. Ind. Code § 24-4.5-3-502 requires that any person engaged in the making of consumer loans obtain a license.

76. Kenzie Academy regularly entered into ISA agreements with its students and prospective students to cover their tuition at Kenzie Academy.

77. Kenzie Academy was, and is not a depository institution, subsidiary that was/is owned and controlled by a depository institution and regulated by a federal banking agency; or a credit union service organization.

78. Kenzie Academy failed to obtain any license permitting it to make consumer loans in Indiana.

79. Mr. Grove's ISA was thus void under Indiana Law.  Ind. Code § 24-4.5-5-202(2).

80. Mr. Grove has paid at least $2,259.10 towards the void ISA.

81. SNHU is the successor in interest to Kenzie Academy.

**WHEREFORE**, Mr. Grove respectfully requests this Honorable Court enter judgment against SNHU, ordering:

a. Damages of all amounts paid by Mr. Grove towards the void ISA, pursuant to Ind. Code § 24-4.5-5-202;

b. Additional damages of up to ten times the amount of the excess charge for SNHU's failure to issue a refund to Mr. Grove, pursuant to Ind. Code § 24-4.5-5-202;

c. Reasonable costs and attorneys' fees pursuant to Ind. Code § 24-4.5-5-202; and,

d. Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE IUCCC, IND. CODE § 24-4.5-3-202
## BOTH DEFENDANTS

82. Mr. Grove adopts and incorporates paragraphs 1 – 70 and 72-78 as if fully stated herein.

83. As aforementioned, Kenzie Academy regularly issued ISAs to its students to cover tuition at Kenzie Academy, each of which was in substantially similar form to Mr. Grove's.

84. Kenzie Academy was therefore a "lender" under Ind. Code § 24-4.5-3-107.

85. Launch Servicing was assigned Mr. Grove's ISA by Kenzie Academy and/or SNHU, and therefore likewise meets the definition of a "lender" pursuant to Ind. Code § 24-4.5-3-107.

86. Ind. Code § 24-4.5-3-201(1) provides that "with respect to a consumer loan, a lender may contract for a loan finance charge, calculated according to the actuarial method, not exceeding twenty-five percent (25%) per year on the unpaid balances of the principal."

87. Ind. Code § 24-4.5-3-202 provides the only permissible fees in addition to the loan finance charge.

88. Ind. Code § 24-4.5-3-202 does not permit an early termination fee.

89. Mr. Grove's ISA's penalty on early repayment thus violated Ind. Code § 24-4.5-3-202.

90. The finance charge on Mr. Grove's ISA exceeded 30%, in violation of Ind. Code § 24-4.5-3-201(1)

91. SNHU is the successor-in-interest to Kenzie Academy.

92. The Defendants knowingly made and collected charges in excess of those permitted by Article 4.5; to wit: a fee or penalty on a borrower for early repayment or prepayment on a private education loan and a finance charge in excess of 25% per year.

**WHEREFORE**, Mr. Grove respectfully requests this Honorable Court enter judgment against the Defendants, ordering:

   a. Damages of all amounts paid by Mr. Grove towards the void ISA, pursuant to Ind. Code § 24-4.5-5-202;

   b. Reasonable costs and attorneys' fees pursuant to Ind. Code § 24-4.5-5-202; and,

   c. Such other relief that this Court deems just and proper.

<u>**COUNT III**</u>
<u>**FRAUD IN VIOLATION OF IND. CODE § 35-43-5-4**</u>
<u>**SNHU ONLY**</u>

93. Mr. Grove adopts and incorporates paragraphs 1 – 70 as if fully stated herein.

94. Kenzie Academy committed criminal fraud by knowingly or intentionally (a) making a false or misleading statement and/or (b) by creating a false impression in Mr. Grove with the intent to obtain property – specifically U.S. currency – to which they were not entitled.

95. Specifically, Kenzie Academy knowingly or intentionally represented that Mr. Grove's that the Defendants had the legal authority to issue and collect the ISA, when they were not licensed to do so.

96. SNHU is the successor in interest to Kenzie Academy, and is thus liable for the above conduct.

**WHEREFORE**, Mr. Grove respectfully requests this Honorable Court enter judgment against SNHU, ordering:

a. Treble damages pursuant to Ind. Code § 34-24-3-1(1);

b. Reasonable costs and attorneys' fees pursuant to Ind. Code §§ 34-24-3-1(2) & (3);

c. Such other relief that this Court deems just and proper.

## COUNT IV
## VIOLATION OF THE IDCSA, IND. CODE § 35-43-5-4
## SNHU ONLY

97. Mr. Grove adopts and incorporates paragraphs 1 – 70 as if fully stated herein.

98. Kenzie Academy provided a service to Mr. Grove in the form of post-secondary education.

99. Kenzie Academy solicited these services by offering to pay tuition via an ISA.

100. Mr. Grove's execution of the ISA to cover his tuition at Kenzie Academy thus amounts to a "Consumer transaction" pursuant to Ind. Code § 24-5-0.5-2.

101. Kenzie Academy provides both the education and income share agreements for funding.

102. Kenzie Academy thus amounts to a "supplier" pursuant to Ind. Code § 24-5-0.5-2.

103. Kenzie Academy committed an unfair and deceptive act by falsely asserting that the Defendants had the legal authority to issue and collect the ISA, when they were not licensed to do so.

104. Mr. Grove relied on Kenzie Academy's deceptive act in entering into the ISA and enrolling at Kenzie Academy.

105. Kenzie Academy's conduct was willful and intentional, as Kenzie Academy utilized ISAs in an attempt to avoid state lending and usury laws.

106. SNHU is the successor in interest to Kenzie Academy, and is thus liable for the above conduct.

**WHEREFORE**, Mr. Grove respectfully requests this Honorable Court enter judgment against SNHU, ordering:

  a. Treble damages pursuant to Ind. Code § 24-5-0.5-4(a)(1);

  b. Statutory damages of $1000 pursuant to Ind. Code § 24-5-0.5-4(a)(2);

  c. Reasonable costs and attorneys' fees pursuant to Ind. Code § 24-5-0.5-4(a)(2); and,

  d. Such other relief that this Court deems just and proper.

### COUNT V
### VIOLATION OF THE FCRA, 15 U.S.C. § 1681s-2(b)
### LAUNCH SERVICING ONLY

107. Mr. Grove adopts and incorporates paragraphs 1 – 70 as if fully stated herein.

108. Launch Servicing violated 15 U.S.C. § 1681s-2(b) when it failed, after receiving notice of dispute from a consumer reporting agency, to conduct a reasonable investigation into a dispute from Mr. Grove.

109. Specifically, Launch Servicing verified its reporting of past-due payments as accurate, when Mr. Grove did not owe payments due to not being employed at the rate required by the ISA.

110. Launch Servicing's conduct was willful, and as a result, Mr. Grove is entitled, pursuant to 15 U.S.C. § 1681n, to the greater of his actual damages and $1000 in statutory damages per violation, reasonable attorneys' fees, and costs.

111. Alternatively, Launch Servicing's conduct was negligent, and as a result, Mr. Grove is entitled, pursuant to 15 U.S.C. § 1681o, to his actual damages reasonable attorneys' fees, and costs.

**WHEREFORE**, Mr. Grove respectfully requests this Honorable Court enter judgment against Launch Servicing, ordering:

   a. The greater of Mr. Grove's actual damages and statutory damages of $1,000 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Mr. Grove's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

   b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

   c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

   d. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Grove hereby demands a jury trial on all issues so triable.

Respectfully submitted this January 19, 2024, by:

**SERAPH LEGAL, P. A.**

*/s/ Christian E. Cok*
Christian E. Cok, Esq.
Florida Bar No.:1032167
CCok@seraphlegal.com

*/s/ Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
BGeiger@SeraphLegal.com

2124 W. Kennedy Blvd., Ste. A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**
A.      Mr. Grove's Income Share Agreement